UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA PORCH-CLARK and MARY L. CORNER, | ) | |
| | ) | |
| Plaintiffs, | ) | 12 C 879 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JACKIE ENGELHART, DAVE BASKIN, and LINDA RETEL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>Memorandum Opinion and Order</u>

Maria Porch-Clark and Mary L. Corner filed this suit against Jackie Engelhart, Dave Baskin, and Linda Retel in the Circuit Court of DuPage County, Illinois. Doc. 1-1. After removing the case to federal court, Doc. 1, Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Doc. 7. Plaintiffs opposed dismissal and moved to remand the case to state court. Doc. 23. The motion to remand is denied and the motion to dismiss is granted.

## Background

This suit is a sequel to *Corner v. Engelhart*, No. 11 C 5183 (N.D. Ill. filed July 29, 2011). Like this suit, *Corner v. Engelhart* arose from an April 2011 election in which Corner ran against Engelhart for President of Northwest Illinois Area Local 7140, American Postal Workers Union, AFL-CIO ("NWIAL"). The background is recounted in *Corner v. Engelhart*, 2011 WL 4688723, at *1-2 (N.D. Ill. Oct. 4, 2011), and may be summarized as follows.

After the American Arbitration Association certified Engelhart as the election's winner,

Corner filed a protest with the three-member NWIAL Election Committee, arguing that

Engelhart was ineligible to run for and serve as President. Porch-Clark, who at the time was

Chairperson of the NWIAL Election Committee, also protested Engelhart's election; this

maneuver led the Election Committee's other two members and designated alternate to disqualify

Porch-Clark from sitting on the Committee for that election cycle. The Election Committee then

rejected Corner's and Porch-Clark's protests on the merits, finding that Engelhart was indeed

eligible to serve as President; the Committee added for good measure that Porch-Clark's protest

was untimely. Corner appealed those decisions to the National Election Appeals Committee of

the American Postal Workers Union ("APWU"), the NWIAL's parent organization, arguing that

Porch-Clark had been wrongfully removed from the NWIAL Election Committee and that

Engelhart was ineligible to serve as President. The National Election Appeals Committee upheld

the NWIAL Election Committee's decisions.

In the meantime, Porch-Clark wrote two letters, one to Corner and the other to Engelhart,

invoking what Porch-Clark called her "authority" to declare Engelhart ineligible to run for and

serve as President and to declare Corner the election's winner. Emboldened by Porch-Clark's

action, Corner sued Engelhart in federal court, asking the court to "enforce" Porch-Clark's

"decision" and to order Engelhart to vacate the NWIAL's building and to turn over its books,

papers, and records. *Corner*, No. 11 C 5183, Doc. 1 (July 29, 2011). The case was dismissed for

want of subject matter jurisdiction. As the court explained, Title IV of the Labor Management

Reporting and Disclosures Act ("LMRDA"), 29 U.S.C. §§ 481-483, provides the exclusive

vehicle for challenging the results of a union election, requiring the challenger to exhaust the

remedies available under the union's constitution and by-laws, then to file a complaint with the Secretary of Labor asking the Secretary to investigate the election and bring a civil action against the union to challenge the election results, and then, if the Secretary does not find probable cause to believe that the union violated federal law and thus does not sue the union, to seek judicial review of the Secretary's decision in federal district court. *Corner*, 2011 WL 4688723, at *2-3 (citing *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964); *Corner v. Solis*, 380 F. App'x 532, 535 (7th Cir. 2010); *Corner v. U.S. Dep't of Labor*, 219 F. App'x 492, 493 (7th Cir. 2007); *Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368 (7th Cir. 1989)). The court held that because Corner's complaint was simply a challenge to the union's decision declaring Engelhart the duly elected NWIAL President, the court lacked subject matter jurisdiction over the case. *Corner*, 2011 WL 4688723, at *4.

In so holding, the court rejected Corner's argument that she was merely seeking to enforce Porch-Clark's "decision" that Corner was President rather than to challenge the union's contrary decision:

> Corner attempts to avoid the [the LMRDA's] jurisdictional bar by characterizing her suit not as one *challenging* the results of the election, but as one seeking to *enforce* the victory granted her by Porch-Clark's letters of July 26, 2011. Corner's premise is that Porch-Clark had the power to declare Engelhart ineligible to hold office and make Corner the victor. That premise is incorrect. The NWIAL Election Committee ousted Porch-Clark, replacing her with the alternate, due to the conflict of interest created by Porch-Clark's filing an election protest. In her appeal to the National Election Appeals Committee, Corner challenged not just the NWIAL Election Committee's decision that Engelhart was eligible, but also its replacement of Porch-Clark by the alternate. Doc. 21-1 at 2-7; Doc. 21-2; Doc. 21-3. The National Election Appeals Committee's written decision plainly shows that it rejected both of Corner's challenges. Doc. 13-1 at 41 ("After careful review of *all documents and evidence* provided, the NEAC upholds the decision of the Local Election Committee and denies your

> election appeal *in its entirety*.") (emphasis added). Thus, according to the union authority charged with making such decisions, Porch-Clark had no power to consider or resolve protests involving NWIAL's April 2011 elections. The letters from Porch-Clark declaring Corner the winner and Engelhart the loser have as much weight as letters written by any person selected at random from the Elmhurst, Illinois telephone book—that is, no weight.

*Id*. at *3. Corner did not appeal the dismissal of her suit.

In the meantime, as the court had suggested during a hearing in *Corner v. Engelhart*, *see Corner*, 2011 WL 4688723, at *3 n.*, Corner filed a complaint with the Secretary under 29 U.S.C. § 482 regarding the union's rejection of her election challenge. The Secretary found that Engelhart was eligible to hold office at the NWIAL, and therefore declined to bring a civil action against the union. Doc. 1-2 at 22, 24-26. As permitted by *Dunlop v. Bachowski*, 421 U.S. 560 (1975), Corner sought judicial review of the Secretary's decision. *Corner v. Solis*, No. 11 C 8652 (N.D. Ill. filed Dec. 6, 2011). The district court granted summary judgment to the Secretary. 2012 WL 1969423 (N.D. Ill. June 1, 2012) (Leinenweber, J.); *Corner*, No. 11 C 8652, Doc. 62 (Aug. 17, 2012) (Leinenweber, J.). Corner's appeal of that judgment remains pending. *Corner v. Solis*, No. 12-2565 (7th Cir.).

Corner also brought a second suit, the suit now before the court, in the Circuit Court of DuPage County. Doc. 1-1. Other than adding one plaintiff (Porch-Clark) and two defendants (Baskin and Retel, the NWIAL's Vice President and Secretary, who can be ignored), the complaint in this case is materially identical to the complaint in *Corner v. Engelhart*. In language echoing the *Corner v. Engelhart* complaint, the complaint in this case alleges that: (1) Porch-Clark was Chairperson of the NWIAL Election Committee during the April 2011 election; (2) Porch-Clark "decided" that Engelhart was ineligible to serve as President; and (3) Engelhart

refused to comply with Porch-Clark's "decision" to "vacate" her office. Doc. 1-1 at 3-4; *compare Corner*, No. 11 C 5183, Doc. 1 at 1-2. And like the *Corner v. Engelhart* complaint, the complaint in this case asks the court "to enforce the Locals's 2011 Election Committee Chairperson Ms. Maria Porch-Clark (Plaintiff) decision," "to enter an order enforcing the removal of Ms. Engelhart … from office and the union building located at 194 West Lake Street Elmhurst, IL 60126 and to returned all keys to the union building and union rooms throughout the Northern Illinois District," and "to order Ms. Engelhart … to turn over all books, papers, records, and documents that are the property of NWIAL, APWU, Local 7140." Doc. 1-1 at 4-5; *compare Corner*, No. 11 C 5183, Doc. 1 at 1-2.

The present complaint also asks that Corner be awarded "retroactive pay" for serving as NWIAL President and that Porch-Clark be awarded a "salary" for serving on the NWIAL Election Committee. Doc. 1-1 at 5. The complaint further requests that Engelhart be ordered "to pay back to NWIAL" the fees paid to her attorney during the period "when she was no longer the President of the NWIAL." *Ibid*. The complaint does not identify any particular state or federal statute or common law doctrine that grounds its claims.

## Discussion

Plaintiffs' remand motion asserts several objections to Defendants' removal of this suit from state court.

First, Plaintiffs incorrectly argue that venue is improper in the Northern District of Illinois. Section 1441(a) provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division

embracing the place where such action is pending." 28 U.S.C. § 1441(a). Section 1446(a)

likewise provides in relevant part that "[a] defendant or defendants desiring to remove any civil

action from a State court shall file [the notice of removal] in the district court of the United

States for the district and division within which such action is pending." 28 U.S.C. § 1446(a).

Plaintiffs filed this suit in the state court sitting in DuPage County, Illinois, which lies within the

Eastern Division of the Northern District of Illinois. *See* 28 U.S.C. § 93(a)(1). It follows that

venue properly lies in this District.

Second, Plaintiffs argue that Defendants did not file a copy of the notice of removal in the

state court within thirty days of receiving a copy of the complaint. That is factually correct but

legally irrelevant. Section 1446(b) provides that a defendant must file a notice of removal in

*federal court* "within 30 days" of receiving a copy of the complaint. 28 U.S.C. § 1446(b).

Defendants complied with this requirement; they were served on January 11, 2012, Doc. 10-2 at

¶ 2; Doc. 18 at 6-8, and they filed the notice of removal in federal court on February 8, 2012,

Doc. 1. Section 1446(d) concerns filing a copy of the notice of removal in *state court*, requiring

that the filing occur "[p]romptly after the filing of [the] notice of removal" in federal court. 28

U.S.C. § 1446(d). On February 8, 2012, the day they filed the notice of removal in federal court,

Defendants mailed two copies of the notice to the Clerk of the DuPage County Circuit Court.

Doc. 15 at 4; Doc. 15-1 at 4. Mistakenly believing that the documents did not refer to a DuPage

County case, the Clerk did not file them and instead returned them to Defendants. Doc. 15 at 4;

Doc. 15-1 at 5. Defendants received the returned documents on February 10 and immediately

contacted the Clerk to clear things up. Doc. 15 at 4; Doc. 15-1 at 6. Defendants re-sent the two

copies that day, and they were received by the Clerk days later.  Doc. 15 at 4-5.  Defendants

indisputably acted with the promptness required by § 1446(d).

Third, Plaintiffs contend that the notice of removal "fraudulently" altered the state court

complaint by adding the union as a defendant and by attaching exhibits other than the state court

complaint.  It is true that the notice of removal's caption lists the union as a defendant, Doc. 1 at

1, but that is because the state court complaint's caption listed "NWIAL Local 7140," Doc. 1-1 at

3.  After Plaintiffs clarified that they did not intend to name the union as a defendant, Defendants

dropped the union from the case caption in all subsequent filings.  Doc. 15 at 2.  It was not

improper for Defendants to attach to the notice of removal documents other than the complaint.

"Because subject matter jurisdiction is at issue, the court 'may properly look beyond the

jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

issue to determine whether in fact subject matter jurisdiction exists.'"  *Corner*, 2011 WL

4688723, at *1 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008)).  The additional

documents are pertinent to the evaluation of this court's subject matter jurisdiction.

Fourth, Plaintiffs argue that the removal was deficient because the notice of removal did

not attach copies of all state court pleadings.  Noting that each defendant was served with a

complaint, summons, and summons service certification, Plaintiffs contend that the notice of

removal falls short because it attached only one copy rather than three copies of each document.

Although § 1446(a) required Defendants to attach "a copy of all process, pleadings, and orders

served upon ... defendants in [the state court] action," 28 U.S.C. § 1446(a), "[t]he failure to

attach such documents is not jurisdictional and will not result in remand as long as sufficient

documents are attached to show the basis for jurisdiction."  *Boxdorfer v. Daimlerchrysler Corp.*,

396 F. Supp. 2d 946, 951 (C.D. Ill. 2005) (citing *Riehl v. Nat'l Mut. Ins. Co.*, 374 F.2d 739 (7th Cir. 1967)), *aff'd*, 435 F.3d 785 (7th Cir. 2006). Two extra copies of the complaint and summons would not have aided this court in evaluating whether the removal was proper; it would have just fattened the notice of removal by over one hundred pages. *See Riehl*, 374 F.2d at 742 ("The directive of § 1446(a) that 'a copy of all process, pleadings and orders' served upon him in the state court action be lodged in the district court by the party removing the action is obviously intended to provide the district court with the record materials necessary to enable the court and the litigants to delineate the issues to be tried."). Defendants' failure to attach those additional copies to the notice does not render the removal ineffective or deprive this court of jurisdiction. *See ibid.* (holding that the failure to attach the state court complaint to the notice of removal was a "minor irregularity of no consequence" given that a materially identical complaint had been attached to the notice of removal in a companion case, and noting that "[t]o permit this minor irregularity to defeat the District Court's jurisdiction would be to elevate form over substance"). In any event, the missing documents have been placed in the record, Doc. 18 at 6-8, which remedies whatever technical defect existed under § 1446(a). *See Int'l Gateway Commc'ns, Inc. v. Commc'n Telesys. Int'l, Inc.*, 922 F. Supp. 122, 124 (N.D. Ill. 1996) (holding that the defendant's failure to attach a summons to the notice of removal could be cured after the thirty-day removal period had expired).

Fifth, Plaintiffs contend that this suit should be remanded because it does not fall within the federal courts' subject matter jurisdiction: "This [suit] is a want of a vacate (removal) of officers who have been removed from office but has refused to leave the premises. Vacate orders are in the jurisdiction of the state." Doc. 23 at ¶ 1; *see also id.* at ¶ 6 ("Vacate/removals from

premises are the jurisdiction of the state."). This argument fails. A somewhat lengthy

explanation is necessary to explain why.

Plaintiffs' entire complaint is premised on their challenge to the result of a union election.

Because Title IV of the LMRDA provides the exclusive vehicle for such challenges, any

challenge based on state law is precluded by the complete preemption doctrine. As the Seventh

Circuit describes it:

> The complete preemption doctrine refers to a limited set of cases in which a
> properly pled state law claim may be said to arise under federal law because
> Congress has effectively eliminated state law causes of action in the entire
> field. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When
> the federal statute completely preempts the state-law cause of action, a
> claim which comes within the scope of that cause of action, even if pleaded
> in terms of state law, is in reality based on federal law."). The Supreme
> Court has recognized complete preemption under sections of [ERISA], the
> Labor Management Relations Act, and the National Bank Act. We have
> recognized complete preemption under a portion of the Federal
> Communications Act ….
>
> Complete preemption exists when federal law provides "the exclusive cause
> of action" for claims in a regulated area. *Anderson*, 539 U.S. at 9. Thus
> stated, the standard sounds admittedly circular, but there is no doubt that
> any further expansion of the doctrine beyond its origins with the Labor
> Management Relations Act requires a clear showing of Congressional intent
> to eliminate state law entirely.

*Northeastern Rural Electric Membership Corp. v. Wabash Valley Power Ass'n*, __ F.3d __, 2013

WL 646051, at *8-9 (7th Cir. Feb. 22, 2013) (some citations omitted).

Although neither the Supreme Court nor the Seventh Circuit has directly addressed

whether Title IV of the LMRDA completely preempts state law challenges to union elections, it

is clear that the requisites of complete preemption are present here. In *Local No. 82, Furniture &*

*Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467

U.S. 526 (1984), the Supreme Court said this about Congress's intent in enacting the LMRDA:

> Throughout its consideration of the LMRDA, Congress clearly intended to lodge *exclusive* responsibility for post-election suits challenging the validity of a union election with the Secretary of Labor. The legislative history of Title IV consistently echoes this theme. … As the Report of the Senate Committee on Labor and Public Welfare explained: "[S]ince the bill provides an effective and expeditious remedy for overthrowing an improperly held election and holding a new election, the Federal remedy is made the *sole remedy* and private litigation would be precluded."

*Id*. at 544 (emphasis added); *see also id*. at 542 n.18 (quoting then-Senator John F. Kennedy as

stating: "Prior to the day of an election an individual can sue in a State. The day after an election

the Secretary of Labor assumes jurisdiction"); *Calhoon*, 379 U.S. at 140 ("Title IV … sets up an

exclusive method for protecting Title IV rights, by permitting an individual member to file a

complaint with the Secretary of Labor challenging the validity of any election because of

violations of Title IV."); 29 U.S.C. § 483 ("The remedy provided by this title for challenging an

election already conducted shall be exclusive."). It follows that the LMRDA completely

preempts other avenues for challenges to the results of a union election. *See Pettaway v. Hous.*

*Fed'n of Teachers, Local 2415*, 2007 WL 951564, at *3 (S.D. Tex. Mar. 27, 2007) ("Because

plaintiff challenges the validity of the election itself, the court is also persuaded that his

complaint is completely preempted. Section 482 creates a comprehensive federal enforcement

procedure that includes a civil action in federal court brought by the Secretary of Labor, and

section 483 indicates Congress's intent to make this remedy exclusive with respect to 'already

conducted' elections. … Plaintiff is therefore limited to the remedy provided by section

483—filing a complaint with the Secretary of Labor."); *Brown v. Am. Arbitration Ass'n*, 717 F. Supp. 195, 199-201 (S.D.N.Y. 1989) (same).

Although it does not refer to the LMRDA or to any other source of substantive law, Plaintiffs' complaint falls wholly within the scope of the LMRDA's complete preemption. The sum and substance of the complaint is that Corner rather than Engelhart won the April 2011 election for NWIAL President; it alleges that Engelhart was ineligible to run for and hold the office, that Porch-Clark was the union official empowered to resolve the election dispute and did so in Corner's favor, and that Engelhart must therefore be removed from office. Plaintiffs submit that their case is simply a "vacate" or "removal" suit or, as their reply brief puts it, an "eviction" action. Doc. 31 at 10. That limited view of the complaint is wrong. As noted above, the complaint asks the court "to enforce" Porch-Clark's "decision" declaring Corner the election's winner, and also seeks back pay for both plaintiffs. Those claims are nothing more, nothing less, than a challenge to the results of the April 2011 election, and thus are completely preempted by the LMRDA. *See Davis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW)*, 392 F.3d 834, 839 (6th Cir. 2004) ("Davis's state-law claims in question, including his requested remedy of back pay, logically hinge on his assertion that he was lawfully elected. … [C]laims for postelection relief are relegated to the exclusive jurisdiction of the Secretary of Labor by the LMRDA."), *overruled on other grounds*, *Blackburn v. Oaktree Capital Mgmt., LLC.*, 511 F.3d 633 (6th Cir. 2008). The same holds for any conceivable "eviction" claim; that claim rests entirely on Plaintiffs' view that the election results were invalid, for if Engelhart is indeed the NWIAL President, then there is no basis for evicting her from the NWIAL's building. *See id*. at 839 (holding that the LMRDA completely preempted state law claims that "logically

-11-

hinge on [the plaintiff's] assertion that he was lawfully elected" to a union office). This whole suit is necessarily one under federal law. Even if state law, by its own terms, provided a vehicle for Plaintiffs' challenge to the election results, the LMRDA's complete preemption precludes those claims.

Plaintiffs nonetheless contend that the case must be remanded to state court "because this court has already ruled it lacks subject matter jurisdiction, as stated in *Corner v. Engelhart*, 11CV5183, (N.D. IL), 2012." Doc. 23 at ¶ 8. It is true that this court lacks subject matter jurisdiction over this suit because Plaintiffs are challenging the outcome of a union election and the LMRDA provides the exclusive avenue for such challenges: a complaint with the Secretary, followed by judicial review in federal district court. *See Corner*, 2011 WL 4688723, at *2-4. It is also true that the removal statute provides that "[i]f at any time before final judgment [in a case that has been removed from state court] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). But remand is inappropriate here because the state court is without jurisdiction to hear the case for the very same reason this court lacks jurisdiction: Title IV provides only one avenue for challenges to the results of union elections, and it completely preempts any state law cause of action that is in substance a challenge to a union election.

Because the determination that the LMRDA deprives this court of jurisdiction applies with equal force to the state court, this case falls within the rule that a removed case over which the federal court lacks jurisdiction should be dismissed rather than remanded if remand would be futile because the federal law that deprives the federal court of jurisdiction also deprives the state court of jurisdiction. The principle is illustrated by *Wujick v. Dale & Dale, Inc.*, 43 F.3d 790 (3d

Cir. 1994), where the plaintiffs filed suit in state court and sought relief that, if granted, would have involved assets of a failed bank then controlled by the Resolution Trust Corporation ("RTC"). The district court concluded that it lacked subject matter jurisdiction because 12 U.S.C. § 1821 provided the exclusive avenue to seek such relief—an administrative claim with the RTC, followed by judicial review of the RTC's decision—and remanded the suit to state court. *Id*. at 792. The Third Circuit reversed, holding that the district court should have dismissed rather than remanded the suit. The court of appeals explained that remand was inappropriate because "Congress expressly withdrew jurisdiction from *all* courts over any claim to a failed bank's assets made outside the procedures set forth in [§ 1821]," concluding that "[s]ince the state court also lacked subject matter jurisdiction for the same reason [that the federal district court did], a remand by the district court would be a vacuous act." 43 F.3d at 793-94 (emphasis added) (internal quotation marks omitted).

The Sixth Circuit's decision in *Davis v. International Union, United Auto., Aerospace & Agricultural Implement Workers of America (UAW)*, *supra*, presented circumstances closely analogous to those here. After being effectively ousted from a union office to which he had been elected, the plaintiff in *Davis* sued the union in state court, bringing state law claims for discrimination, wrongful discharge, retaliation, and libel. 392 F.3d at 835. The district court held that it lacked subject matter jurisdiction and remanded the suit to state court. *Id*. at 835-36. The Sixth Circuit reversed. It first held that the plaintiff's claims all fell within "the exclusive jurisdiction of the Secretary of Labor [under] the LMRDA." *Id*. at 839. From that premise, the court concluded that the claims "should therefore be dismissed by the district court for lack of subject matter jurisdiction" rather than remanded, and sent the case back to the district court

-13-

"with instructions to dismiss the claims on the basis that they are precluded by the LMRDA." *Id*. at 839, 840. Two district court LMRDA decisions have reached the same result, dismissing rather than remanding cases that were completely preempted by the LMRDA. *See Pettaway*, 2007 WL 951564, at *3; *Brown*, 717 F. Supp. at 199-201 (same).

The same result is warranted here. It is important to emphasize that dismissal rather than remand the appropriate course only because it is federal law, not state law, that precludes the state court from hearing this case. As explained by a leading civil procedure treatise:

> One doctrine that qualifies the general rule that a district court that lacks subject-matter jurisdiction should remand the case to state court is the "futility exception." This exception allows a district court to dismiss an action rather than remand it to the state court when remand would be futile because the state court also would lack jurisdiction over the matter. The doctrine has been embraced consistently by the Fifth and Ninth Circuits, but on some occasions has been rejected by other circuits, including the Third, the Fourth, and the Seventh Circuits, on the basis of the "shall be remanded" language of Section 1447(c). Other decisions of the Third and Seventh Circuits have embraced vacatur of a federal judgment rather than remand, however, when the state court too would lack subject-matter jurisdiction. Even those courts who adopt the futility exception hold that, if the existence of subject-matter jurisdiction in the state court turns on a debatable application or interpretation of state law, a federal district court should remand the case to that court, despite a party's contentions that remand would be futile.

14C Charles A. Wright *et al*., Federal Practice & Procedure § 3739 (4th ed. updated 2012) (citations and internal quotation marks omitted). *Wujick* is the Third Circuit case cited by the treatise as having "embraced" the futility exception "when the state court too would lack subject-matter jurisdiction." The Seventh Circuit case cited for the same point is *Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994), which held that the district court correctly dismissed a removed case where the state court lacked jurisdiction to order the requested relief;

-14-

the plaintiff had caused to be issued a state court subpoena requiring the United States

Department of Justice to turn over certain information, which ran afoul of "[t]he common law

doctrine embodied in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)," that "a federal

employee cannot be compelled to obey a subpoena, even a federal subpoena, that acts against

valid agency regulations." *Id*. at 316-17.

The Seventh Circuit decision cited by the treatise as having "rejected" the futility

exception on the "occasion[]" presented by that case is *Smith v. Wisconsin Department of

Agriculture, Trade & Consumer Protection*, 23 F.3d 1134 (7th Cir. 1994). The plaintiff in *Smith*

was a dairy farmer who brought suit in Wisconsin state court against the state agriculture

department and others. *Id*. at 1138. The case was removed to federal court, and the district court

dismissed the claims against the state agency for lack of subject matter jurisdiction. *Ibid*. The

plaintiff argued on appeal that because the district court lacked subject matter jurisdiction, it

should have remanded the case to state court under § 1447(c). *Id*. at 1138. The agency

"respond[ed] to this straightforward argument by contending that there is no point in remanding

the case, since the state court, *as a matter of state law* (particularly the state's doctrine of

sovereign immunity), would have in any event dismissed the claims." *Id*. at 1139 (emphasis

added). The Seventh Circuit disagreed:

> [T]he Supreme Court has squarely rejected the argument that there is an
> implicit 'futility exception' hidden behind the plain meaning of § 1447(c).
> *See Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500
> U.S. 72 (1991). Just as in *Primate Protection League*, whether a Wisconsin
> court would entertain Smith's suit against [the defendant] turns on a
> question of Wisconsin law, and we decline to speculate on the proper result.
> *Id. See also Maine Ass'n of Independent Neighborhoods v. Comm'r, Maine
> Dept. of Human Services*, 876 F.2d 1051, 1055 (1st Cir. 1989) ("But the fact
> that we believe a certain legal result *unlikely*, as a matter of state law, is not

-15-

> sufficient grounds for reading an exception into the absolute statutory words 'shall be remanded.'") (emphasis in original).
>
> If the district court lacked subject-matter jurisdiction over Smith's claim against [the state agency], it is clear that his claim should have been remanded to Wisconsin state court.

*Id*. at 1139 (brackets, footnote, and internal quotation marks omitted).

The authors of the treatise presumably read the first sentence in this passage from *Smith*—"the Supreme Court has squarely rejected the argument that there is an implicit 'futility exception' hidden behind the plain meaning of § 1447(c)"—as disapproving the futility exception. But that sentence should be read in the context of the next sentence, in which the Seventh Circuit notes that the defendant's futility argument was grounded in *state* law and declines to "speculate on the proper result." *Smith* did not address the situation in this case, or the situation faced by the Third Circuit in *Wujick* and the Sixth Circuit in *Davis*, where remand is futile as a matter of *federal* law because the federal law that deprives the federal court of jurisdiction also deprives the state court of jurisdiction. For a federal court to remand a case to state court after determining that federal law barred the state court from proceeding in the case would, as the Third Circuit put it in *Wujick*, be "a vacuous act." 43 F.3d at 793-94. *Smith* does not require that result.

The two decisions cited by *Smith* are consistent with the view that the futility doctrine may be applied where federal law renders remand futile. In *Primate Protection League*, one of the defendants, the National Institutes of Health ("NIH"), argued that remanding the case to Louisiana state court would be futile because that court would find an NIH officer to be an indispensable defendant as a matter of Louisiana law and the officer then would remove the case

back to federal court under 28 U.S.C. § 1442(a)(1), the federal officer removal statute.  500 U.S. at 87-88.  The Supreme Court rejected the argument, reasoning that "[w]hether NIH is correct in arguing that either it or one of its officials will be deemed an indispensable party in state court turns on a question of Louisiana law, and we decline to speculate on the proper result."  *Id*. at 89. In *Maine Association of Independent Neighborhoods*, in an opinion authored by then-Judge Breyer, the First Circuit likewise rejected a futility argument grounded on state law.  The court held: "We think … that the district court erred in departing from the literal words of § 1447(c), which, on their face, give it no discretion to dismiss rather than remand an action.  And, we are unwilling to read such discretion into the statute, here, because we cannot say with absolute certainty that remand would prove futile.  It is conceivable, though unlikely, that [the plaintiff] will succeed in finding a state law forum for its claims."  *Id*. at 1054.  The First Circuit could not "say with absolute certainty" that the Maine state court would decline to hear the case because "Maine's standing rules are somewhat more liberal" than federal standing rules, and also because it was unclear whether a federal officer would be deemed an indispensable party under Maine procedural rules.  *Id*. at 1054, 1055.  The First Circuit concluded:

> [D]espite our doubts about whether [the plaintiff] can convince the state court that it has standing and that it may bring its action in the [federal official's] absence, we believe that [the plaintiff] should have a chance to try.  We therefore conclude that the district court ought to have followed the statute, 28 U.S.C. § 1447(c), as written, and remanded the case, indeed, the entire case, to the state court, permitting that court to decide whether or not to retain the federal [official] as a party.

*Id*. at 1056.  Thus, like the Supreme Court in *Primate Protection League* and the Seventh Circuit in *Smith*, the First Circuit thought it inappropriate to dismiss rather than remand a case based on a

-17-

prediction that the state court would resolve a state law issue in a manner that would result in the case being unable to proceed in state court.

As the treatise notes, the foregoing precedents rest on a distinction between remands that are supposedly futile based on state law and those that are clearly futile as a matter of federal law, with the futility exception to § 1447(c) being acceptable in the latter situation only. It must be acknowledged that some appellate decisions do not fit the mold. On one side is *Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991), which applied the futility exception based on a prediction that the "state court would have simply dismissed the action on remand due to the fatal failure to comply with the [state law] bond posting requirement." *Id*. at 1425. On the other side is *Dial v. Healthspring of Alabama, Inc.*, 541 F.3d 1044 (11th Cir. 2008), which rejected the futility exception where the same federal law that ousted the federal court's subject matter jurisdiction also precluded the state court from hearing the plaintiff's claim. *Id*. at 1047-48. The legal terrain is admittedly uncertain, but a decision must be made. The court opts for the course suggested by the treatise, which draws a distinction between futility arguments based on state law and those based on federal law, and the course taken by *Davis*, the appellate decision that provides the closest analog to this case.

With Plaintiffs' remand motion resolved, the court turns to Defendants' motion to dismiss. Resolution of that motion is simple: As in *Corner v Engelhart*, because Plaintiffs' claims fall squarely within Title IV of the LMRDA, the court lacks subject matter jurisdiction. *See Corner*, 2011 WL 4688723, at *3-4. It follows that the case must be dismissed. Lest any confusion linger, this does not mean that Plaintiffs are free to re-file their case in state court. If they do, Defendants will be entitled to remove the case and the court once again will dismiss it.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion to remand is denied, and Defendants'

motion to dismiss is granted.  This dismissal is for want of subject matter jurisdiction, and thus is

without prejudice.

March 11, 2013                    _____

United States District Judge